**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

REDSTONE LOGICS LLC,

              Plaintiff,

    v.

APPLE INC.,

              Defendant.

No. 7:25-cv-00183-ADA

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

                                                                                      **Page**

I.    INTRODUCTION ............................................................................................... 1

II.   ARGUMENT ...................................................................................................... 2

      A.    Redstone's Reliance on Wikipedia Does Not Cure the SAC's Deficiencies......... 2

      B.    The Wikipedia Article Does Not Render Satisfaction of the "PLL"
            Limitation Plausible. ...................................................................................... 2

      C.    The Wikipedia Article Confirms that the Accused SoCs Do Not Practice
            the "Independent" Limitation. ...................................................................... 4

      D.    The Prosecution History and Technology Complexity Underscore the
            Need for More Detail about the "PLL" and "Independent" Limitations,
            Not Less. ........................................................................................................ 5

      E.    Redstone's Conclusory Marking Allegations Fail to Plead Pre-Suit
            Damages.......................................................................................................... 7

      F.    Leave to File a Third Amended Complaint Should Be Denied. ............................ 9

III.  CONCLUSION.................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALD Soc. LLC v. Verizon Commc'ns, Inc.*,
2023 WL 11915724 (W.D. Tex. Sept. 30, 2023) ....................................................................10

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc. ("Arctic Cat II")*,
950 F.3d 860 (Fed. Cir. 2020) ...........................................................................................7, 8, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................1

*Askan v. FARO Techs., Inc.*,
2025 WL 1363303 (Fed. Cir. May 12, 2025) ...........................................................................1

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*,
748 F.3d 631 (5th Cir. 2014) ....................................................................................................2

*Clark v. Thompson*,
850 F. App'x 203 (5th Cir. 2021) .........................................................................................3, 7

*CPC Pat. Techs. Pty Ltd. v. Apple Inc.*,
No. 6:21-CV-00165-ADA, 2022 WL 118955 (W.D. Tex. Jan. 12, 2022) ...............................8

*De La Vega v. Microsoft Corp.*,
No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) ............................2

*Estech Sys. IP, LLC v. Grandstream Networks Inc.*,
No. 2:24-CV-1018-RWS-RSP, 2025 WL 2780145 (E.D. Tex. Sept. 30, 2025) .......................8

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ..................................................................................................10

*Lighting Def. Grp. LLC v. Shanghai Sansi Elec. Eng'g Co. Ltd.*,
2024 WL 4905222 (D. Ariz. Nov. 27, 2024) ............................................................................9

*Lionra Techs. Ltd. v. Apple Inc.*,
2023 WL 11915728 (W.D. Tex. May 10, 2023) ....................................................................6, 7

*Menard v. CSX Transp., Inc.*,
698 F.3d 40 (1st Cir. 2012) ....................................................................................................3, 5

*Nichia Corp. v. Feit Elec. Co.*,
2023 U.S. Dist. LEXIS 4600 (C.D. Cal. Jan. 10, 2023) ...........................................................9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Cases**

*Novitaz, Inc. v. inMarket Media, LLC,*
    2017 WL 2311407 (N.D. Cal. May 26, 2017) ...........................................................................1

*Ortiz & Assocs. Consulting, LLC v. Vizio, Inc.,*
    2025 WL 3653227 (Fed. Cir. Dec. 17, 2025) ...........................................................................8

*Power Analytics Corp. v. Operation Tech., Inc.,*
    820 F. App'x 1005 (Fed. Cir. 2020) .....................................................................................3, 5

*Shamoon v. City of San Antonio,*
    2025 WL 1356399 (W.D. Tex. Apr. 30, 2025)..........................................................................6

*Stripling v. Jordan Prod. Co., LLC,*
    234 F.3d 863 (5th Cir. 2000) ..................................................................................................10

*Team Worldwide Corp. v. Acad., Ltd,*
    2021 WL 1854302 (E.D. Tex. May 10, 2021)...........................................................................9

*Unicorn Energy AG v. Tesla Inc.,*
    740 F. Supp. 3d 930 (N.D. Cal. 2024) ......................................................................................9

*USC IP Partnership, L.P. v. Facebook, Inc.,*
    No. 6:20-CV-00555-ADA, 2021 WL 3134260 (W.D. Tex. July 23, 2021)..............................4

*VDPP, LLC v. Volkswagen Grp. of Am., Inc.,*
    2024 WL 1313899 (S.D. Tex. Mar. 27, 2024)...........................................................................8

*Vervain, LLC v. Micron Tech., Inc.,*
    No. 6:21-cv-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) .....................................6

*VirtaMove, Corp. v. Google LLC,*
    No. 25-CV-00860-NW, 2025 WL 3312434 (N.D. Cal. Nov. 28, 2025) ...................................8

**Statutes**

35 U.S.C. § 287...............................................................................................................1, 7, 8, 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...............................................................................................................2, 10

Fed. R. Civ. P. 16(b)(4)................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

**Other Authorities**

Local Rule CV-7(b) ............................................................................................................10

iv

## I.    INTRODUCTION

Redstone's Opposition confirms that its Second Amended Complaint (ECF No. 39 ("SAC")) lacks sufficient detail to state a plausible claim of infringement for multiple limitations and pre-suit damages, and thus dismissal is proper.

The SAC contains only conclusory and insufficient allegations for two material limitations that Redstone added during prosecution to overcome prior art. (ECF No. 43 ("Mot.") at 4-8.) Attempting to cure these deficiencies, Redstone relies solely on a generic Wikipedia article that it cited for the first time in its Opposition. (ECF No. 50 ("Opp.") at 1, 4.) But Redstone's reliance on materials outside the SAC is both improper and ineffective. Redstone identifies no factual basis for its speculative "information and belief" allegation that the accused SoCs satisfy the limitations at issue.[1] And Redstone's Wikipedia article, which describes a multi-processor system using pre-processor PLLs and a single input clock, underscores that it is unreasonable to assume those limitations are met. Although acknowledging that it must show that "all claim limitations of at least one claim of the claimed invention are practiced by the accused products," Redstone fails to do so for at least the limitations it failed to adequately plead in the SAC. (Opp. at 3 (citing *Novitaz, Inc. v. inMarket Media, LLC*, 2017 WL 2311407, at *3 (N.D. Cal. May 26, 2017)).)

Additionally, Redstone fails to plead compliance with § 287 because it has not alleged that all prior owners and all licensees marked practicing products for the entire damages period.

---

[1] Redstone's assertion of discovery deficiencies is baseless. (Opp. at 1, n.1.) Apple produced technical documents responsive to Redstone's discovery requests, including schematics of the accused SoCs. Apple also made its source code and live data available for review pursuant to the protective order, but Redstone has not sought review. To the extent Redstone claims it lacks information, that is entirely of its own making. Regardless, Redstone's unfounded need for additional discovery does not relieve it of the obligation to plead plausible infringement allegations. *See Askan v. FARO Techs., Inc.*,, 2025 WL 1363303, at *3 (Fed. Cir. May 12, 2025) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 685-86 (2009)) ("The [district] court properly determined it could not permit discovery in order for [the Plaintiff] to obtain enough facts upon which to plausibly plead an infringement claim.").

The Court should therefore dismiss the SAC.[2] After squandering multiple opportunities over nearly a year to present sufficient allegations (*e.g.*, in response to Apple's June 2025 letter (ECF No. 42-5) and two motions to dismiss), Redstone should not be permitted leave to amend.

## II.    ARGUMENT

### A.    Redstone's Reliance on Wikipedia Does Not Cure the SAC's Deficiencies.

Redstone improperly attempts to fill the SAC's missing PLL and clock allegations—deficiencies Apple identified in its opening brief—by citing a generic Wikipedia article on PLLs instead of pleading facts specific to Apple's products. (Opp. at 1, 4; ("Mot.") at 4-7.) These missing allegations are vital because Redstone relied on the same PLL and clocking requirements to distinguish prior art during prosecution. (*See* Mot. at 4-5.)

But Redstone cannot use a Wikipedia article to belatedly bolster its deficient SAC allegations. On a Rule 12(b)(6) motion, "a district court generally must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (cleaned up). A plaintiff "cannot cure deficiencies in [its] Amended Complaint through new allegations in [its] response to [a] motion to dismiss." *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020). As Redstone's Opposition turns on the Wikipedia article, dismissal is warranted.

### B.    The Wikipedia Article Does Not Render Satisfaction of the "PLL" Limitation Plausible.

Even if considered, the Wikipedia article does not support Redstone's PLL theory because it never says different clock domains imply one PLL per core set, as the claims require. The phase

---

[2] Redstone's comparison of Apple's motion to MediaTek's and NXP's motions fails. (Opp. at 4.) The motions filed by MediaTek and NXP addressed different pleading theories whereas Apple challenges Redstone's Apple-specific admission that Redstone does not know Apple's clocking mechanism and does not identify any PLL input clock signals.

lock loop limitation requires that each processor core from the first set of processor cores receive a first output clock signal of a first PLL; and that each processor core from the second set of processor cores receive a second output clock signal of a second PLL. ('339 patent at 7:54-64.) Redstone openly admits it does not know "the precise mechanism used to provide a clock signal." (ECF No. 38-2 ("Claim Chart") at 7.)

Redstone's allegations that the accused SoCs satisfy these limitations on "information and belief" (*id.* at 4, 7) are insufficient because Redstone has not shown reasonable diligence. Information and belief allegations do not allow for "pure speculation," *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012), but require the plaintiff to "exercise[] reasonable due diligence and provide[] some factual basis for its allegations that would raise a reasonable expectation that discovery will reveal evidence" of the alleged conduct, as Redstone acknowledges. (Mot. at 6 (quoting *Clark v. Thompson*, 850 F. App'x 203, 209 (5th Cir. 2021)).) Nor does Redstone deny that it must offer some "explanation or detail as to what 'information and belief' supports" its allegations. (*Id.* at 6 (quoting *Power Analytics Corp. v. Operation Tech., Inc.*, 820 F. App'x 1005, 1020 (Fed. Cir. 2020)); *see also Menard*, 698 F.3d at 44.)

The Wikipedia article provides no explanation or detail that leads to a reasonable expectation that a separate PLL serves each processor core of a given set. Redstone mischaracterizes the Wikipedia article as showing that "it is typical that each clock domain" in a multi-processor system "is provided by a separate PLL." (Opp. at 4.) Redstone infers that because the accused SoCs' processor cores allegedly operate in separate domains, it is "entirely reasonable to infer that Apple use follows [sic] the typical practice and provides a separate PLL." (*Id.*) But the cited portion of the Wikipedia article does not refer to different clock domains, much less processors being in different clock domains, as Redstone suggests.

3

In addition, Redstone fails to explain why it would be more reasonable to infer from the Wikipedia article that multiple cores share a single PLL, as the claims require, rather than that each core has its own PLL—the typical practice according to Redstone. (Opp. at 1.) It is, therefore, more reasonable to infer from Wikipedia that Apple does not infringe.

Citing *USC IP Partnership, L.P. v. Facebook, Inc.*, No. 6:20-CV-00555-ADA, 2021 WL 3134260, at \*2 (W.D. Tex. July 23, 2021), Redstone contends that its "on information and belief" allegations are acceptable because the accused products' operation is "not ascertainable without discovery." (Opp. at 4-5.) But *USC* did not involve "on information and belief" allegations at all. Instead, the complaint in *USC* raised a reasonable inference that the accused product included the disputed "intent engine" because it adequately alleged how the product practiced each claimed functionality corresponding to that engine. *USC*, 2021 WL 3134260, at \*2.

Here, by contrast, Redstone has not adequately alleged how the accused SoCs practice the SAC's missing PLL and clock allegations. Redstone has not done so because it claims not to know how the accused SoCs provide clock signals to each core and states no basis for its related conclusory allegations.

### C. The Wikipedia Article Confirms that the Accused SoCs Do Not Practice the "Independent" Limitation.

The same generic Wikipedia article also undercuts Redstone's independent clock signal theory because it describes a single reference clock signal. (Opp. at 1.) The "independent" limitation requires that the first and second PLLs have respective first and second clock signals as inputs and that those first and second clock signals be "independent." ('339 patent at 7:66-67.) Again, Redstone admits it does not know "the precise mechanism used to provide a clock signal" and alleges that the "independent" limitation is satisfied on "information and belief." (Claim Chart at 7.) But Redstone's Opposition and its SAC fail to articulate the basis for its belief that the

accused SoCs satisfy the "independent" limitation. Redstone posits that it would be "entirely plausible for [the] PLLs to provide different clock domains, [such that] they are provided with different, independent clock signals as input." (Opp. at 5.) But that sort of conclusory allegation is insufficient. *See Power Analytics*, 820 F. App'x at 1020; *Menard*, 698 F.3d at 44.

Redstone has not plausibly pleaded that the accused SoCs practice this limitation. To the contrary, Redstone's Wikipedia article confirms that assumption is unreasonable. As the article explains, "the clocks supplied to [] processors [in multi-processor systems] come from clock generator PLLs." (Opp. at 1.) Those PLLs "multiply a lower-frequency reference clock (usually 50 or 100 MHz) up to the operating frequency of the processor." *Id.* Critically, the article does not say that each processor (in Redstone's reading, each set of cores) in a "typical" multi-processor system has its own PLL with its own independent reference clock signal. Instead, the article refers to a "lower-frequency reference clock" (singular) that supplies the clock signal to all the PLLs. (Opp., Ex. A at 5; *see also id*. at 9 (describing how PLLs use a reference clock from a "single . . . reference oscillator" to produce "a large number of frequencies").)

As the Wikipedia article only describes all PLLs receiving a single clock signal, Redstone cannot use it to show that each PLL's input signal is independent. Dismissal is therefore warranted.

### D. The Prosecution History and Technology Complexity Underscore the Need for More Detail about the "PLL" and "Independent" Limitations, Not Less.

Redstone's[3] representations during prosecution, in view of the technical complexity at issue, further demonstrate that Redstone must plead additional facts to support its infringement claims.

First, Redstone's positions before the PTO confirm that the "PLL" and "independent" limitations are material and, in its view, are not automatically met given cores running at different

---

[3] Redstone does not dispute that it is bound by the applicant's representations to the USPTO.

frequencies. During prosecution, Redstone took the position that a prior art SoC with two sets of cores running at different frequencies did not disclose two PLLs with independent input clock signals, and disputed the obviousness of adding independent input clock signals. (*See* Mot. at 6-7.) The asserted claims issued only after Redstone added the "PLL" and "independent" limitations. (*Compare* Mot. at 4-5, *with* Opp. at 5-6.) Redstone is now looking at the same fact—different frequency cores—and drawing the opposite conclusion: the product necessarily has two PLLs with independent input clock signals because of the different frequency cores. (Claim Chart at 7.)  It cannot take one position in front of the USPTO and another in front of this Court.

Redstone is wrong that it need not provide detailed contentions for the "PLL" and "independent" limitations because the applicant distinguished the prior art on other bases. (Opp. at 5.) Redstone does not dispute the applicant's heavy emphasis on both limitations, including by dedicating its last interview with the Examiner to discussing the independence of the "clock signals input to the PLLs." (Mot., Ex. 2.) Nor does Redstone dispute that it focused exclusively on the "PLL" and "independent" limitations in opposing MediaTek's IPR. (*See id.*, Exs. 3, 4.) Redstone's inability to plead factual support for the infringement of the "PLL" and "independent" limitations justifies dismissal. *See, e.g.*, *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-cv-00487-ADA, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022) (dismissing infringement claim where plaintiff relied on limitation to distinguish prior art during prosecution but failed to plead facts supporting infringement of same limitation); *Shamoon v. City of San Antonio*, 2025 WL 1356399, at *5 (W.D. Tex. Apr. 30, 2025) (same).

Second, Redstone's cited cases fail to establish that the technology here is simple. Citing *Lionra Techs. Ltd. v. Apple Inc.*, 2023 WL 11915728, at *2 (W.D. Tex. May 10, 2023), Redstone contends that it need not provide detail for the "PLL" and "independent" limitations because the

accused technology here allegedly is not "complex." (Opp. at 6.) But the direct infringement allegations in *Lionra* were well-pleaded because the plaintiff identified a "plethora" of evidence to support them. The plaintiff's evidence there included reference to teardown of accused iPhone products, citation to wireless standards, and reliance on undisputed industry facts. *Lionra*, 2023 WL 11915728, at *4. Here, by contrast, Redstone points to no comparable documentation in either its SAC or Opposition. Unlike the plaintiff in *Lionra*, Redstone has not shown that it has "exercise[d] reasonable due diligence" or "provide[d] some factual basis" for its information-and-belief allegations. *Clark*, 850 F. App'x at 209. Dismissal therefore is warranted.

E.      **Redstone's Conclusory Marking Allegations Fail to Plead Pre-Suit Damages.**

Redstone's conclusory assertion that it "has complied with all applicable provisions of Section 287(a)," (Opp. at 8), does not plead that Redstone is entitled to any pre-suit damages for at least three reasons: Redstone does not allege that (1) the '339 patent's prior owner complied with the marking requirement; (2) all licensees complied; or (3) that Redstone and its licensees complied for the entire pre-suit damages period.

First, Redstone does not plead compliance before its acquisition of the '339 patent in December 2022. The marking requirement is not limited to the plaintiff; it also extends to relevant third parties. *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc. ("Arctic Cat II")*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("licensees must also comply with § 287"). Although Redstone did not acquire the '339 patent until December 2022 (ECF No. 49-2 at 1), the SAC does not allege that previous owners of the patent complied with the marking statute. A conclusory allegation that Redstone complied with § 287 says nothing about whether prior patentees and their licensees complied during the years before Redstone acquired the patent. Indeed, Redstone previously acknowledged that it could not take a position on marking because it "is not the original assignee of the '339 patent" and needed discovery before asserting compliance. (ECF No. 26 at 1, n.1.)

Redstone therefore fails to plead pre-suit damages from at least the beginning of the damages period through December 2022.[4]

Second, Redstone does not plead compliance after it acquired the patent. Although the SAC references a 2024 license as merely an "example," it is silent as to whether other licenses existed before that date and whether any licensees practiced the patent without marking. That omission is fatal because "[a] patentee's licensees must also comply with § 287," and a patentee "must make at least a preliminary showing that [its licensees] marked the patent." *Arctic Cat II*, 950 F.3d at 864; *VDPP, LLC v. Volkswagen Grp. of Am., Inc.*, 2024 WL 1313899, at *4 (S.D. Tex. Mar. 27, 2024) (dismissing non-practicing entity's pre-suit damages claim for failure to plead marking given the existence of licensees from prior litigations). Here, rather than make a preliminary showing that its licensees complied with § 287, Redstone pleads ignorance as to whether its licensees complied. (SAC ¶ 12 ("Redstone is aware of no unmarked patented article made, offered for sale, or sold for or under a patentee prior to [the 2024 date].").) Thus, Redstone has failed to state a claim for pre-suit damages after its acquisition of the '339 patent in December 2022. *See Ortiz & Assocs. Consulting, LLC v. Vizio, Inc.*, 2025 WL 3653227, at *3-4 (Fed. Cir. Dec. 17, 2025) (upholding attorneys' fees award after plaintiff failed to plead compliance with marking obligation triggered by licensees).

---

[4] The authorities Redstone cites are distinguishable. In *CPC Patent Technologies*, the complaint "allege[d] that Plaintiff provided Defendant specific notice of the patents [in suit] months before filing . . . which entitles Plaintiff to past damages." *CPC Pat. Techs. Pty Ltd. v. Apple Inc.*, No. 6:21-CV-00165-ADA, 2022 WL 118955, at *4 (W.D. Tex. Jan. 12, 2022). No such circumstances exist here because Redstone does not allege that it provided Apple with prior notice. Additionally, the plaintiff in *Estech*, unlike Redstone, pleaded allegations related to the "predecessors-in-interest" of the asserted patent. *Estech Sys. IP, LLC v. Grandstream Networks Inc.*, No. 2:24-CV-1018-RWS-RSP, 2025 WL 2780145, at *3 (E.D. Tex. Sept. 30, 2025). *Virtamove* is also inapposite because the only asserted claim in that case was a method claim to which the marking statute does not apply. *VirtaMove, Corp. v. Google LLC*, No. 25-CV-00860-NW, 2025 WL 3312434, at *9 (N.D. Cal. Nov. 28, 2025).

Third, Redstone does not plead compliance after the 2024 date. Except for Redstone's conclusory allegation that it complied with § 287 and it has no knowledge of a patentee practicing the patent, the allegations in the SAC are limited to "prior to [the 2024] date." A failure to mark after the 2024 date precludes Redstone from recovering all pre-suit damages under *Arctic Cat II* and *Team Worldwide. See Arctic Cat II*, 950 F.3d at 865; *Team Worldwide Corp. v. Acad., Ltd*, 2021 WL 1854302, at *1 (E.D. Tex. May 10, 2021).

Redstone's reliance on the District of Delaware decision in *Arendi* is misplaced. The Federal Circuit has not adopted Arendi's reading of *Arctic Cat II*, and courts that squarely considered the competing readings of *Arctic Cat II* have rejected *Arendi*'s narrower approach and followed *Team Worldwide*.[5] Those courts hold that "[a] plain reading of § 287 would bar ***all*** recovery of damages until notice is given." *Unicorn Energy AG v. Tesla Inc.*, 740 F. Supp. 3d 930, 964 (N.D. Cal. 2024) (emphasis in original). This remedy is the statutory consequence of Congress's decision "to incentivize marking of patented articles." *Id.* at 965 (cleaned up); *see also Lighting Def. Grp. LLC v. Shanghai Sansi Elec. Eng'g Co. Ltd.*, 2024 WL 4905222, at *23 (D. Ariz. Nov. 27, 2024). Redstone's contrary assertion that *Arctic Cat II* does not bar all pre-suit damages therefore rests on the very interpretation that courts weighing the *Arendi*/*Team Worldwide* divide have declined to adopt. Thus, Redstone's failure to plead compliance with the marking statute after 2024 warrants the dismissal of its claim to any pre-suit damages.

### F.    Leave to File a Third Amended Complaint Should Be Denied.

Redstone should not be granted leave to amend. Redstone has already amended twice since it filed its Complaint over a year ago, and it has had ample opportunity to cure any deficiencies.

---

[5] Redstone's citation to *Nichia* (Opp. at 9) is inapposite because the *Nichia* court did not consider *Arctic Cat II*, *Arendi*, or *Team Worldwide*. *See generally*, *Nichia Corp. v. Feit Elec. Co.*, 2023 U.S. Dist. LEXIS 4600 (C.D. Cal. Jan. 10, 2023).

Yet it has failed to do so, and the Court may deny leave to amend for this reason alone. *See, e.g.*, *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (repeated failure to cure deficiencies may warrant denial of leave to amend). Furthermore, the deadline to amend under the scheduling order has passed (ECF No. 25 at 3), and Redstone has not shown the good cause required to modify the scheduling order to allow it another opportunity to amend. *See* Fed. R. Civ. P. 16(b)(4). Moreover, Redstone's request may be denied because it omits the "executed copy of the proposed pleading" required by Local Rule CV-7(b). *See ALD Soc. LLC v. Verizon Commc'ns, Inc.*, 2023 WL 11915724, at \*8 (W.D. Tex. Sept. 30, 2023) (denying leave where plaintiff failed to propose amendments or explain how they would cure deficiencies as required by local rules).[6]

## III.    CONCLUSION

For the foregoing reasons, the SAC fails to plausibly allege infringement of the limitations Redstone added to overcome prior art and fails to plead compliance with § 287. The Court should therefore dismiss the SAC and bar Redstone's claim for pre-suit damages.

---

[6] For the same reason, Redstone's futility argument is a red herring. (Opp. at 11.) Because futility is evaluated under Rule 12(b)(6), Apple cannot assess it absent Redstone's proposed amendments. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (stating that the 12(b)(6) standard is the test for futility).

Dated: June 4, 2026

Respectfully submitted,

By: */s/ Shaelyn K. Dawson*
Brian C. Nash (TX Bar No. 24051103)
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
Tel.: (512) 617-0654
bnash@mofo.com

Richard S.J. Hung (admitted *pro hac vice*)
Shaelyn K. Dawson (admitted *pro hac vice*)
Karina N. Pundeff (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Tel.: (415) 268-7000
rhung@mofo.com
shaelyndawson@mofo.com
kpundeff@mofo.com

Scott F. Llewellyn (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202
Tel.: (303) 592-2204
sllewellyn@mofo.com

Ryan Malloy (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
Tel.: (213) 892-5200
rmalloy@mofo.com

Sara Doudar (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA 92130
Tel.: (858) 720-5100
sdoudar@mofo.com

**Counsel for Defendant Apple Inc.**

11

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on all counsel of record via email on June 4, 2026.

*/s/ Shaelyn K. Dawson*
Shaelyn K. Dawson
